

**FILED**

SEP - 7 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1  PHILLIP A. TALBERT
   United States Attorney
2  PAUL A. HEMESATH
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
   ROBERT C. TROYER
6  United States Attorney
   MICHELE R. KORVER
7  Assistant United States Attorney
   1801 California Street, Suite 1600
8  Denver, CO 80202
   Telephone: (303) 454-0100
9  Facsimile: (303) 454-0400

10
   Attorneys for Plaintiff
11 United States of America

12

13            IN THE UNITED STATES DISTRICT COURT

14            EASTERN DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,              CASE NO. 2:17-cr-00135 MCE

16                    Plaintiff,          PLEA AGREEMENT

17              v.                        DATE: September 7, 2017
                                          TIME: 10:00 a.m.
18 DANIEL ROBERT SUMMERFIELD,             COURT: Hon. MC England

19                    Defendant.

20

21            **I.    INTRODUCTION**

22   **A.    Scope of Agreement**

23        Through this plea agreement the defendant is pleading to an indictment filed in the District of

24 Colorado (Case No.: 17-CR-00051-CMA) pursuant to Rule 20 of the Federal Rules of Criminal

25 Procedure. The indictment in this case charges the defendant with a violation of: Title 18, United States

26 Code, Sections 1960(b)(1)(B) and (C) (Count One); Title 18, United States Code, Sections

27 1956(a)(1)(A)(i) and (a)(1)(B)(i) (Count Two); and Title 18, United States Code, Sections 1956(a)(3)(A)

28 (Count Three). This document contains the complete plea agreement between the United States

PLEA AGREEMENT                              1

1    Attorneys' Offices for the Eastern District of California and the District of Colorado (the "government")

2    and the defendant regarding this case.  This plea agreement is limited to the United States Attorneys'

3    Office for those districts and cannot bind any other federal, state, or local prosecuting, administrative, or

4    regulatory authorities.

5         **B.    Court Not a Party**

6              The Court is not a party to this plea agreement.  Sentencing is a matter solely within the

7    discretion of the Court, and the Court may take into consideration any and all facts and circumstances

8    concerning the criminal activities of defendant, including activities that may not have been charged in

9    the indictment.  The Court is under no obligation to accept any recommendations made by the

10   government, and the Court may in its discretion impose any sentence it deems appropriate up to and

11   including the statutory maximum stated in this plea agreement.

12             If the Court should impose any sentence up to the maximum established by the statute, the

13   defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all

14   of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

15   defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

16   receive.

17                    **II.    DEFENDANT'S OBLIGATIONS**

18        **A.    Guilty Plea**

19             The defendant will plead guilty to Count Two of the indictment: a violation of Title 18, United

20   States Code, Section 1956(h), (a)(1)(A)(i), and (a)(1)(B)(i) – that defendant knowingly combined,

21   conspired, and agreed with another person to knowingly conduct financial transactions affecting

22   interstate commerce and foreign commerce, which transactions involved the proceeds of specified

23   unlawful activity, that is, conspiracy to distribute controlled substances in violation of Title 21, United

24   States Code, Section 846, with the intent to promote the carrying on of the specified unlawful activity,

25   and knowing that the transactions were designed in whole or in part to conceal and disguise the nature,

26   location, source, ownership, and control of the proceeds of specified unlawful activity, and that while

27   conducting such financial transactions, knew that the property involved in the financial transactions

28   represented the proceeds of some form of unlawful activity.  The defendant agrees that he is in fact

1  guilty of this charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A

2  are accurate.

3      The defendant agrees that this plea agreement will be filed with the Court and become a part of

4  the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his

5  plea should the Court not follow the government's sentencing recommendations.

6      The defendant agrees that the statements made by him in signing this Agreement, including the

7  factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

8  the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

9  guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal

10  Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these

11  rules are inconsistent with this paragraph or with this Agreement generally.

12      **B.    Sentencing Recommendation**

13      The defendant and his counsel may recommend whatever sentence they deem appropriate.

14      **C.    Special Assessment**

15      The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

16  a check or money order payable to the United States District Court to the United States Probation Office

17  immediately before the sentencing hearing. The defendant understands that this plea agreement is

18  voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the

19  defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money

20  to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

21      **D.    Defendant's Violation of Plea Agreement or Withdrawal of Plea**

22      If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw

23  his plea, this plea agreement is voidable at the option of the government. The government will no longer

24  be bound by its representations to the defendant concerning the limits on criminal prosecution and

25  sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime

26  or provide any statement or testimony which proves to be knowingly false, misleading, or materially

27  incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a

28  violation of the agreement. The determination whether the defendant has violated the plea agreement

PLEA AGREEMENT                                      3

1  shall be decided under a probable cause standard.

2       If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the

3  government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded

4  guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file

5  any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter

6  be subject to prosecution for any federal criminal violation of which the government has knowledge,

7  including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these

8  options is solely in the discretion of the United States Attorney's Office.

9       By signing this plea agreement, the defendant agrees to waive any objections, motions, and

10  defenses that the defendant might have to the government's decision to exercise the options stated in the

11  previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as

12  of the date of this plea agreement may be commenced in accordance with this paragraph,

13  notwithstanding the expiration of the statute of limitations between the signing of this plea agreement

14  and the commencement of any such prosecutions.  The defendant agrees not to raise any objections

15  based on the passage of time with respect to such counts including, but not limited to, any statutes of

16  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

17  Amendment to any counts that were not time-barred as of the date of this plea agreement.

18       In addition: (1) all statements made by the defendant to the government or other designated law

19  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

20  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

21  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

22  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

23  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

24  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

25  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

26      **E.**    **Forfeiture**

27       The defendant agrees to forfeit to the United States voluntarily and immediately all of his right

28  title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. §§ 982 and  21 U.S.C.

1 853. Those assets include, but are not limited to, the following:

2         1.     $450,000.00 in U.S. Currency;

3         2.     $257,254.00 in U.S. Currency; and

4         3.     613.5 Bitcoin ("BTC").

5     The defendant agrees that the listed assets constitute property involved in violations of 18

6 U.S.C. § 1956 and that are proceeds traceable to violations of 21 U.S.C. § 846.

7     The defendant agrees to fully assist the government in the forfeiture of the listed assets and to

8 take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell,

9 transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed

10 assets.

11     The defendant agrees not to file a claim to any of the listed property in any civil proceeding,

12 administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of

13 any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a

14 claim in that forfeiture proceeding.

15     The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of

16 assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

17 to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense,

18 and agrees to waive any claim or defense under the Eighth Amendment to the United States

19 Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,

20 the State of California or its subdivisions.

21     The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any

22 defenses or defects that may pertain to the forfeiture.

23             **III.    THE GOVERNMENT'S OBLIGATIONS**

24     **A.   Dismissals**

25     The government agrees to move, at the time of sentencing, to dismiss without prejudice the

26 remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed

27 count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation

28 of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal) herein.

**B.**  **Recommendations**

    1.  <u>Incarceration Range</u>

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

    2.  <u>Acceptance of responsibility</u>

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.**  **Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

**IV.**  **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

As to Count Two, Title 18, United States Code, Section 1956(h), (a)(1)(A)(i), and (a)(1)(B)(i):

    a.    The defendant conspired or agreed with others to conduct financial transactions affecting interstate and/or foreign commerce;

    b.    the financial transactions involved the proceeds of or property used to conduct or facilitate specified unlawful activity, conspiracy to distribute controlled substances, in violation of Title 18, United States Code, Section 846;

1    c.    the defendant conducted the financial transactions with the intent to promote the
2          distribution of controlled substances; and

3    d.    the transactions were designed in whole or in part to conceal and disguise the nature,
          location source, ownership, and control of the proceeds of specified unlawful activity.

4    The defendant fully understands the nature and elements of the crimes charged in the indictment

5    to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with

6    his attorney.

7                          V.      **MAXIMUM SENTENCE**

8          A.    **Maximum penalty**

9          The maximum sentence that the Court can impose is 20 years of incarceration, a fine of

10   $500,000, a three-year period of supervised release and a special assessment of $100.  In addition, the

11   defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21

12   U.S.C. § 862.  By signing this plea agreement, the defendant also agrees that the Court can order the

13   payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant

14   agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which

15   the defendant is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt

16   to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

17         B.    **Violations of Supervised Release**

18         The defendant understands that if he violates a condition of supervised release at any time during

19   the term of supervised release, the Court may revoke the term of supervised release and require the

20   defendant to serve up to two years of additional imprisonment.

21                          VI.     **SENTENCING DETERMINATION**

22         A.    **Statutory Authority**

23         The defendant understands that the Court must consult the Federal Sentencing Guidelines and

24   must take them into account when determining a final sentence.  The defendant understands that the

25   Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

26   Sentencing Guidelines and must take them into account when determining a final sentence.  The

27   defendant further understands that the Court will consider whether there is a basis for departure from the

28   guideline sentencing range (either above or below the guideline sentencing range) because there exists

PLEA AGREEMENT                                        7

1  an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

2  consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further

3  understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

4  impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

5  **B.     Guideline Calculations**

6        The government and the defendant agree that the following is their present best estimate of the

7  sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office,

8  or the parties:

9    Base Offense Level:                                                 +8   (§2S1.1(a)(2))
10   Specific Offense Characteristics:
       More than $550,000                                      +14   (2B1.1(b)(1)(H) and 1B1.3)
11                                                                      +8   (§2S1.1 (b)(1) and(b)(2)(B))

12   Acceptance of Responsibility:                               -3

13   *Criminal History Category: I*

14

15 **Sentencing Range:**                                  **/I = 70 to 87 months**

16        The parties agree that they will not seek or argue in support of any other specific offense

17 characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

18 or cross-references, except that the government may move for a departure or adjustment based on

19 defendant's post-plea obstruction of justice (§3C1.1).  Both parties agree not to move for, or argue in

20 support of, any departure from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220

21 (2005).

22        The defendant is free to recommend to the Court whatever sentence he believes is appropriate

23 under 18 U.S.C. § 3553(a).  The government is not obligated to recommend any specific sentence.

24 **VII.     WAIVERS**

25 **A.     Waiver of Constitutional Rights**

26        The defendant understands that by pleading guilty he is waiving the following constitutional

27 rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

28 be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

PLEA AGREEMENT                                           8

1  testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be
2  compelled to incriminate himself.

3  **B.    Waiver of Appeal and Collateral Attack**

4      The defendant understands that the law gives the defendant a right to appeal his guilty plea,
5  conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to
6  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not
7  exceed 100 months. The defendant specifically gives up the right to appeal any order of restitution the
8  Court may impose.

9      Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if
10  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the
11  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant
12  understands that these circumstances occur infrequently and that in almost all cases this Agreement
13  constitutes a complete waiver of all appellate rights.

14      In addition, regardless of the sentence the defendant receives, the defendant also gives up any
15  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
16  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

17      Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will
18  move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss
19  the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading
20  guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea
21  Agreement) herein.

22  **C.    Impact of Plea on Defendant's Immigration Status**

23      Defendant recognizes that pleading guilty may have consequences with respect to his
24  immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes
25  are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant
26  and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an
27  aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC §
28  1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings

PLEA AGREEMENT                                      9

1 | to avoid or delay removal, it is virtually certain that defendant will be removed.  Indeed, because
2 | defendant is pleading guilty to a felony involving a drug element, removal is presumptively mandatory.
3 | Removal and other immigration consequences are the subject of a separate proceeding, however, and
4 | defendant understands that no one, including his attorney or the district court, can predict to a certainty
5 | the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to
6 | plead guilty regardless of any immigration consequences that his plea may entail, even if the
7 | consequence is his automatic removal from the United States.

## VIII.   ENTIRE PLEA AGREEMENT

9 | Other than this plea agreement, no agreement, understanding, promise, or condition between the
10 | government and the defendant exists, nor will such agreement, understanding, promise, or condition
11 | exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
12 | counsel for the United States.

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel

15 | I have read this plea agreement and have discussed it fully with my client.  The plea agreement
16 | accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to
17 | plead guilty as set forth in this plea agreement.

Dated:   9/7/17

BENJAMIN D. GALLOWAY
Counsel for Defendant

1

**B.    Defendant**

2        I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

3    understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully

4    understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

5    case.  No other promises or inducements have been made to me, other than those contained in this plea

6    agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

7    Finally, I am satisfied with the representation of my attorney in this case.

8

Dated:    9/7/17

9                                                        X

10                                                       DANIEL ROBERT SUMMERFIELD,
                                                        Defendant

11    **C.    Attorney for the United States**

12        I accept and agree to this plea agreement on behalf of the government.

13    Dated: 9/7/16

14                                                       PHILLIP A. TALBERT
                                                        United States Attorney
                                                        Eastern District of California

15

16    By:
                                                        PAUL A. HEMESATH
                                                        Assistant United States Attorney

17

18    Dated: 9/7/16

19                                                       ROBERT C. TROYER
                                                        United States Attorney
20                                                       District of Colorado

21    By:
                                                        MICHELE R. KORVER
                                                        Assistant United States Attorney

22

23

24

25

26

27

28

1

**EXHIBIT "A"**
**Factual Basis for Plea**

2

3        If this matter proceeded to trial, the United States would establish the following facts beyond a
reasonable doubt:

4        From on or about January 17, 2016, through on or about and between February 9, 2017, the
defendant agreed with co-defendant Nancy Verschuren and others to conduct financial transactions

5   using the Internet and affecting interstate and foreign commerce. The defendant knew that the funds
used in the financial transactions were the proceeds of Darknet sales of controlled substances, and the

6   transactions were intended to both promote and conceal the drug trafficking business.

7        Specifically, and in furtherance of this money laundering conspiracy, in or about July 2016,
using an account on the bitcoin trading website localbitcoins.com, the defendant contacted an

8   undercover agent seeking to exchange bitcoins for cash. The defendant met in Los Angeles, California,
with two undercover agents to conduct a cash-for-bitcoin transaction of over $40,000. During the

9   meeting, the defendant took the cash from the agents and transferred bitcoins to the agents' undercover
bitcoin account. The transaction occurred electronically over the Internet from the defendant's online

10  bitcoin wallet to the agents' undercover bitcoin wallet, thus affecting interstate and foreign commerce.
The defendant did not ask the agents for any personally identifying information (such as full name,

11  social security number, or tax payer identification numbers) prior to, during, or after the cash
transaction. The meeting was recorded and monitored.

12

13       On August 4, 2016, agents analyzed the defendant's sending bitcoin wallet addresses. A review of
these addresses showed that the bitcoin wallet cluster conducted over 1000 transactions for a total sent

14  amount of over 1,700 BTC and received over 1,800 BTC from June 2016 to August 2016. On August 10,
2016, the value of one bitcoin was approximately $591.06, according to Coinbase.com. Using this

15  exchange rate, the defendant's bitcoin wallet sent over $1,000,000 and received over $1,000,000 between
June 2016 and August 2016. A review of the defendant's localbitcoins.com account showed that the

16  defendant was actively exchanging bitcoins with others since the account creation in early 2016.

17       On in the summer of 2016, two undercover agents met the defendant at a Starbucks located in
Sacramento, California. During the meeting with the agents, the defendant took possession of $100,000

18  in cash from the agents in exchange for over 170 bitcoins and told the agents that he doesn't use the banks
very often and just uses cash because it "keeps government off your back," that he moves 200 lbs. of

19  marijuana per week, and that he deals with other individuals to exchange bitcoins for U.S. currency. In
addition, the agents explained that they were ecstasy dealers and that their transaction was in anticipation

20  of sales at "Burning Man." This meeting was recorded and monitored.

21       In September 2016, via encrypted communications between the defendant and an undercover
agent, the defendant admitted that he was a vendor selling marijuana on the Darknet black market

22  Alphabay.

23       In November 2016, agents conducted surveillance of the defendant and co-defendant Nancy
Verschuren, who had driven to Colorado to conduct a bitcoin-for-cash transaction in an amount exceeding

24  $250,000. During surveillance, agents observed the defendant and Verschuren drive a Saturn Vue to the
Centennial Airport in Centennial, Colorado. The defendant and Verschuren drove to the meeting location

25  in Stapleton, Colorado, with undercover agents.

26       During the November 4, 2016, meeting, the defendant and Verschuren told undercover agents that
they operated on the Internet as Darknet drug vendors selling marijuana. They further stated that they were

27  based in California and sold to customers throughout the United States. The defendant and Verschuren
stated that they employ an individual who assists them in taking orders, packaging marijuana, and mailing

28  the parcels at various post offices in California. The defendant then described that customers send him
bitcoin for marijuana, and that in order to buy more marijuana, they have to liquidate the bitcoins for cash

1 | to pay their marijuana supplier.  The defendant also stated that they met with an individual, with whom
2 | he received over $200,000 in cash in exchange for bitcoin.  Verschuren stated that when they receive cash,
   | it goes right back into their business.    The undercover agents further explained to the defendant and
3 | Verschuren that they also sold drugs, specifically ecstasy pills from suppliers in the Netherlands.   The
   | defendant stated that he and Verschuren sold ecstasy in the past, but they fully transitioned to Darknet
4 | sales of marijuana after losing parcels containing ecstasy in U.S. customs.   During the meeting, the
   | undercover agents received over 300 bitcoins from the defendant in exchange for over $250,000 in cash.
5 | Verschuren stated that the monies received from the exchange would be used to buy a couple hundred
   | pounds (marijuana).  The meeting was monitored and recorded.

Dated: _____9/7/17_____        X _____
                                       DANIEL ROBERT SUMMERFIELD,
                                       Defendant